IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MWAMBA M. RUFFIN,<br><br>      Plaintiff,<br><br>v.<br><br>FAIYAZ AHMED, STEPHEN RITZ, VIPIN K. SHAH, WEXFORD HEALTH SOURCES, INC., JOHN BALDWIN, and ROB JEFFREYS,<br><br>      Defendants. | Case No. 3:19-CV-01270-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Defendant John Baldwin's Motion for Summary Judgment (Docs. 59, 60) and Defendants Wexford Health Sources, Inc.'s and Stephen Ritz's Combined Motion and Brief in Support of Motion for Summary Judgment (Doc. 62). For the reasons set forth below, Baldwin's motion is granted, and Wexford's and Dr. Ritz's motion is denied.

### BACKGROUND

On November 19, 2019, Plaintiff Mwamba Ruffin, an inmate of the Illinois Department of Corrections ("IDOC") who is currently housed at Big Muddy River Correctional Center, filed his Complaint pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs and medical negligence (Doc. 2, p. 1). Specifically, Ruffin alleges Defendants all denied and delayed medical surgery for a lump on his shoulder, and, as a result, acted with deliberate indifference and medical

negligence (Doc. 2, pp. 6-7).

On November 19, 2019, this case was severed from *Ruffin v. Trotter*, Case No. 19-cv-896-SMY (Doc. 5). This Court ordered Ruffin to inform the Court in writing by December 26, 2019, as to whether he wished to proceed with his lawsuit, but Ruffin did not respond by the deadline, and the case was dismissed on January 2, 2020 (Docs. 5, 9, 12). Ruffin requested this Court reconsider that order, and he was then allowed to proceed on the following count(s):

> Count 3: Eighth Amendment claim against Defendants Faiyez Ahmed, Dr. Ritz, Vipin K. Shah, Wexford Health Sources, Inc., and John Baldwin for their deliberate indifference to Ruffin's painful left shoulder mass and infection at Lawrence.
>
> Count 4: Illinois medical negligence claim against Defendants Ahmed, Ritz, Shah, Wexford, and Baldwin for delaying or denying Ruffin medical care and surgery for a painful left shoulder lipoma and infection at Lawrence.

(Doc. 14, pp. 1, 3).

Defendants move for summary judgment on the basis that Ruffin failed to exhaust administrative remedies regarding Counts 3 and 4 (Docs. 59, 60, 62). Baldwin argues that Ruffin's grievances failed to grieve his conduct, and the only connection is Baldwin's concurrence with the decision by the Administrative Review Board ("ARB") (Doc. 60, p. 6). Additionally, Baldwin argues that his denial of the grievance is not enough to be considered a violation of Ruffin's constitutional rights because his role was simply to review and make decisions on grievances (*Id*. at pp. 6-7).

Dr. Ritz argues Ruffin's grievance had no identification or description of Dr. Ritz within it, and, therefore, no notice was provided (Doc. 62, p. 12). Wexford also argues

Ruffin's grievance failed to specify a relevant policy, procedure, or custom that caused his alleged constitutional violation (*Id*. at p. 14).

Ruffin responded to Baldwin's motion, arguing that Baldwin was fully aware of Ruffin's issue when he concurred with the ARB and made no efforts to remedy the situation (Doc. 70, p. 1). Ruffin also responded to Dr. Ritz's and Wexford's motion, arguing that he named Dr. Ritz as he was instrumental in the denial of his grievances (Doc. 67 p. 2). Also, Ruffin argued that he attempted to get names of the medical directors and administrators relevant to his complaints to no avail, but he eventually got names from nurses and medical records (*Id*.). Ruffin argued he named Wexford in his grievances after he learned it needed to be done (*Id*. at p. 1).

## RELEVANT GRIEVANCES

After reviewing the record, the Court finds the following grievances to be relevant to both Ruffin's claims and Defendants' motions for summary judgment.

### I.     June 8, 2018

Ruffin filed a grievance on June 8, 2018, alleging he was "informed by the doctor on the 3 to 11 shift that the medical administrators had denied the doctor's referral to have the lump removed from [his] left shoulder." (Doc. 67, p. 25). Ruffin learned it was considered a cosmetic issue, which is why his referral was denied (*Id*.). Ruffin argued he tried for over two years to have his lump removed because it continues to cause him pain and headaches (*Id*.). Ruffin said the pain medication provided only temporary relief without resolving the burning sensation from the lump (*Id*. at pp. 25-26). Ruffin argued the continued denial of the lump removal was a direct violation of his rights under the

First and Eighth Amendments (*Id*. at p. 26).

A grievance counselor recommended denying the grievance on June 11, 2018 (*Id*. at p. 25). The Grievance Officer also recommended denying the grievance on September 18, 2018, and the Chief Administrative Officer concurred in the denial the following day (Doc. 60-3, p. 83). The ARB denied the grievance on January 19, 2019 (Doc. 60-1, p. 26).

## II.     August 26, 2018

Ruffin filed an emergency grievance on August 26, 2018, regarding medical treatment and denial of surgery (Doc. 60-3, pp. 99-100). Ruffin stated a lipoma on his left shoulder was causing him "so much pain" (*Id*.). A physician, Dr. Ahmed, ordered Ruffin get his lipoma dressed and cleaned every day until he saw him a week later (*Id*.). Unfortunately, however, Ruffin was not called to get the lipoma dressed or cleaned from August 15, 2018 to August 17, 2018, and Dr. Ahmed allegedly left a punctured hole on Ruffin's shoulder that later became infected (*Id*.). Ruffin said the hole and infection would not close or heal, caused him a lot of pain, continued to bleed, and had an expulsion of discharge (*Id*.). Dr. Ahmed put in three referrals for Ruffin to have surgery done on his shoulder, but "WEXFORD administrators along with the IDOC Lawrence Medical Director continue[d] to deny Dr. Ahmed's referrals." (*Id*. at pp. 99-100). Ruffin complained that Wexford had denied him medical treatment for two years (*Id*. at p. 100).

Despite referrals by Dr. Ahmed for Ruffin to see a dermatologist, Wexford continued to deny those referrals on the grounds that his shoulder issue was a cosmetic one (Doc. 60-3, pp. 100). Ruffin complained that the pain continued to worsen, and he, consequently, was unable to lay on his left side (*Id*.). Ruffin said medications and shots

failed to take away the pain and infection (*Id*.). The Chief Administrative Officer expedited the grievance as an emergency on August 29, 2018 (*Id*.). On September 25, 2018, the Grievance Officer recommended denying Ruffin's emergency grievance because Ruffin was being treated by physicians and had a scheduled ultrasound (Doc. 60-3, p. 101). The Chief Administrative Officer concurred with this decision on September 27, 2018 (*Id*.).

## LEGAL STANDARDS

### I. Summary Judgment Standard

Summary judgment is proper if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). In other words, a plaintiff

cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id*. Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit sets forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison official prevent a prisoner from exhaustion his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### II.     Illinois Exhaustion Requirement

As an IDOC inmate, Ruffin was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMINISTRATIVE CODE §504.800 *et seq.*

The Illinois Administrative Code sets forth what information must be included in a grievance:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(b).

The Seventh Circuit has recognized, however, that while the Illinois Administrative Code now requires the name or a description of the persons involved in the complaint, the "Department of Corrections has been slow to make that requirement explicit on the forms it gives inmates." *Conley v. Anglin*, 513 F. App'x 598, 601 (7th Cir. 2013) ("We have held that when a prisoner uses a grievance form asking only for a 'Brief Summary of Grievance,'…then the omission of names or identifying information does not necessarily mean that the prisoner failed to exhaust his administrative remedies so long as he otherwise followed the grievance process."). Thus, when a prisoner uses a grievance form that only asks for a "Brief Summary of Grievance," the Court of Appeals has held that the omission of names or identifying information is not dispositive of the issue. *Id.*; *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011).

ANALYSIS

**I.     Failure to Exhaust as to John Baldwin**

Baldwin argues that Ruffin's June and August 2018 grievances were insufficient to exhaust his claims against him because Ruffin did not name him or provide information that would put Baldwin on notice of the issue (Doc. 60, pp. 2-3; Doc. 67, pp. 20, 25).

Problems normally occur when the grievance form only says, "Summary of Grievance," as it does not alert the inmate to write specific details such as names of individuals involved in the events at issue. *Conley*, 513 F. App'x at 601. But both the June and August 2018 grievance forms said, "Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved)" (Doc. 60-1, p. 28; Doc. 60-3, p. 99). Ruffin's grievances in no way mention Baldwin and, therefore, Baldwin was not put on notice as required (Doc. 60-1, pp. 28-29; Doc. 60-3, pp. 99-100). Thus, Ruffin failed to exhaust his administrative remedies as to Baldwin as required by the PLRA. 42 U.S.C. §1997e(a).

Additionally, Baldwin simply served as the Director of the IDOC, and his job includes concurring or dissenting with the ARB's recommendation regarding the disposition of grievances. "Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Baldwin was involved only in the administrative steps rather than

in the actual events referenced in the grievance. Thus, summary judgment as to Baldwin is appropriate.

## II.     Failure to Exhaust as to Dr. Stephen Ritz

Dr. Ritz argued that Ruffin failed to name him or provide additional information sufficient enough to identify him in the relevant grievance (Doc. 62, p. 2). Ruffin grieved the actions and inactions of "medical officials," "medical administrators," and "IDOC medical officials and administrators" (Doc. 60-3, pp. 81-82).

As stated above, the grievance forms Ruffin used put him on notice to identify the individuals with whom he had issues. The most specific Ruffin became was when he stated, "the doctor on 3 to 11 shift" (Doc. 60-3, p. 81). Interestingly, this doctor was not Dr. Ritz. The identifying words Ruffin used such as "medical officials," "medical administrators," and "IDOC medical officials and administrators" could indicate a very wide number of individuals within IDOC (*Id*.).

Where Ruffin got it right, however, is when he stated that he asked for approval for surgery to be done on his left shoulder and in saying those "medical administrators denied the doctor's referral/request to have the large lump on [his] left shoulder removed." (*Id*.). The grievance form asks that the inmate include "the name *or* identifying information for each person involved," suggesting that it can be one or the other (*Id*.) (emphasis added). Although Ruffin did not use a specific name, he did offer "identifying information," and that is enough here.

## III.    Failure to Exhaust as to Wexford

In Ruffin's August 26, 2018 grievance, Ruffin identified Wexford by specifically

Page **9** of **12**

stating "WEXFORD administrators…continue to deny Dr. Ahmed's referrals," and he requested that "Wexford administrators not violate [his] medical rights" regarding the referrals to get the lump on his shoulder removed (Doc. 60-3, pp. 99-100). Therefore, Wexford was on notice as to the issues in this case.

Wexford argues Ruffin failed to exhaust because his grievance failed to specify a relevant policy, procedure, or custom that caused the alleged constitutional violation (Doc. 62, p. 14). The Supreme Court established liability for municipalities under 42 U.S.C. § 1983 for constitutional violations resulting from a "policy or custom" in *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). The Seventh Circuit has subsequently applied this holding to private corporations like Wexford which act under the color of state law. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 966-67 (7th Cir. 2019).

To bring a claim based on a policy of an entity such as Wexford, a plaintiff must first demonstrate that his injury was caused by the policy in question. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). A plaintiff can point to "a pattern of behavior that would support an inference of a custom or policy." *Id.* at 796. The plaintiff must further show that policymakers were "aware of the risk created by the custom or practice" and were "deliberately indifferent as to known or obvious consequences" of the practice. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Ruffin did not explicitly identify a Wexford policy within his grievance. Ruffin did, however, indicate in his grievance that, despite Dr. Ahmed's consistent referrals for outside treatment, "WEXFORD administrators…continue to deny Dr. Ahmed's

referrals…For over 2 years WEXFORD has continue[sic] to deny and violate [his] medical rights and the 8th Amendment." (Doc. 60-3, pp. 99-100). Ruffin also stated, "Wexford has been denying me to be seen by a dermatologist for[sic] approximately 2012-2018," and indicated he suffered further pain throughout those years (*Id*. at p. 100). "[A] single incident of a lapse in follow-up medical care is not enough to show either a formal policy on Wexford's part or an informal custom." *Thomas v. Martija*, No. 19-1767, 2021 WL 968833, at *7 (7th Cir. Mar. 16, 2021). But Ruffin emphasized the lack of medical care occurred over a number of years. Thus, these statements imply a practice by Wexford in denying medical care.

Wexford points to *Nally v. Obaisi* to support its argument that Ruffin's grievance contained only a vague assertion as to Wexford's practice. Case No. 17-cv-2909, 2019 WL 6527953, at *4 (December 4, 2019); (Doc. 62, p. 12). But this argument by Wexford glosses over significant flaws that have been observed in Wexford's practice by courts in recent years. Most notably, voluminous discovery and multiple well-researched expert reports prepared for the Northern District of Illinois chronicled systematic failings in IDOC's health care system over a period of years, specifically citing delays in the provision of offsite services and specialist care resulting from Wexford practices including collegial review. *Lippert et al. v. Ghosh et al.*, Case No. 10-cv-04603, Doc. 339 at 29, Doc. 767 at 63-64 (N.D. Ill.). Without going into exhaustive detail, *Lippert* is far from the only case to have observed delays and failings in the medical care provided by IDOC through Wexford.

Accordingly, Ruffin adequately grieved an alleged practice by Wexford in denying medical treatment. Wexford is not entitled to summary judgment.

Page **11** of **12**

CONCLUSION

For these reasons, Defendant John Baldwin's Motion for Summary Judgment (Docs. 59, 60) is **GRANTED**, and Defendant Wexford Health Sources' and Defendant Stephen Ritz's Combined Motion and Brief in Support of Motion for Summary Judgment (Doc. 62) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 23, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**